**UNITED STATES of America,
Plaintiff-appellee,**

v.

**Willie Lee RANDEL, Defendant-
appellant.**

**No. 93-3047.**

United States Court of Appeals,
Tenth Circuit.

Nov. 8, 1993.

Gregory G. Hough (Jackie N. Williams, U.S. Atty. with him on the briefs), Asst. U.S. Atty., Topeka, KS, for plaintiff-appellee.

Michael M. Jackson, Topeka, KS, for defendant-appellant.

Before SEYMOUR, BARRETT and ANDERSON, Circuit Judges.

BARRETT, Senior Circuit Judge.

Willie Lee Randel appeals from the judgment entered on his plea of guilty to a two-count indictment, charging Randel and co-defendants Milton Gene Lee, W.C. Thompson, and Ivy Simmons Gillespie with knowingly, willfully and unlawfully conspiring with intent to distribute cocaine and knowingly and intentionally possessing with the intent to distribute cocaine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1).

On June 25, 1992, Randel entered into an oral plea agreement under which he agreed to plead guilty in exchange for the government's agreement not to file a 21 U.S.C. § 851 prior conviction information against him. Notwithstanding the agreement, the government subsequently filed a § 851 information setting forth Randel's prior conviction which the government relied upon to seek an enhanced sentence.

On the day of the trial, Randel responded to the government's § 851 information and moved for enforcement of the oral plea agreement. In answer, the government disputed that a binding offer of plea was ever made. The government argued that any action taken on June 25, 1992, was simply part of ongoing negotiations, that it had withdrawn the plea agreement offer well before Randel tried to accept it, and that the acceptance or rejection of any plea agreement rests within the sound discretion of the United States Attorney. Believing that the government was not legally permitted to withdraw its plea agreement, the district court rejected the government's arguments and entered an order granting Randel's motion for enforcement of the plea agreement. The court also denied the government's motion to reconsider. The government served notice on defendant and the court that it intended to appeal the court's refusal to let it withdraw the plea agreement. Randel then formally accepted the plea agreement and entered a plea of guilty on August 24, 1992.

On August 27, 1992, the district court entered an order stating that it was reconsidering its decision to enforce the plea agreement. The court's "order indicated that on the basis of *Mabry v. Johnson,* 467 U.S. 504, [104 S.Ct. 2543, 81 L.Ed.2d 437] (1984) and *United States v. Papaleo,* 853 F.2d 16 (1st Cir.1988), it appeared that the government was entitled to withdraw the plea bargaining proposal prior to defendant pleading guilty

or taking other significant action in reliance on the offer." (R., Vol. One, Tab 183 at 3).

On September 11, 1992, the district court entered an order vacating its order enforcing the plea agreement. Thereafter, Randel filed a motion to withdraw plea. On October 26, 1992, the district court entered an order denying Randel's motion, finding that he had "failed to show a fair and just reason for withdrawing" his plea of guilty. (R., Vol. One, Tab 193 at 15). During Randel's sentencing hearing, the district court overruled his objection to a § 851 enhancement predicated on his prior Texas conviction.

On appeal, Randel contends that the district court erred in: vacating its order to enforce the plea agreement; finding his prior Texas conviction valid under state law; and finding that his prior Texas conviction was not obtained in violation of the United States Constitution.

### I.

■ Randel contends that the district court erred after accepting his unconditional plea, in vacating its order enforcing the plea agreement. We review *de novo* a district court's compliance with the requirements of Fed.R.Crim.P. 11 designed to ensure that a plea is made knowingly and voluntarily. *United States v. Elias,* 937 F.2d 1514, 1517 (10th Cir.1991).

■ Randel argues that the district court, after entering an order enforcing the plea agreement and unconditionally accepting his guilty plea, was not authorized under Rule 11, Fed.R.Crim.P. 32 or the common law to subsequently enter an order vacating its order enforcing the plea agreement. During the sentencing hearing, Randel volunteered to the court that he was aware that the government intended to appeal the order enforcing the plea agreement and he assured the court that should the government prevail on appeal, he would not move to withdraw his guilty plea. Randel argues that the district court's reliance on his waiver of the right to withdraw his plea in the event that the district court's ruling enforcing his plea agreement should be reversed on appeal "ignores the fact that the district court had no author-

ity to vacate its order [of August 24, 1992] concerning the plea agreement." (Brief for Appellant at 18). Randel cites to *United States v. Olesen,* 920 F.2d 538 (8th Cir.1990) for the proposition that once a district court unconditionally accepts a Rule 11(e)(1)(C) plea containing a specific sentence, it cannot subsequently, absent fraud, modify the sentence portion of the agreement.

The government responds that the district court properly relied upon *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), in ruling that the government was entitled to withdraw the plea agreement prior to its acceptance. We agree.

In *Mabry,* the Court considered "whether a defendant's acceptance of a prosecutor's proposed plea bargain creates a constitutional right to have the plea bargain specifically enforced." *Id.* at 505, 104 S.Ct. at 2545. In holding that it did not, the Court opined that:

> [a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution.

*Id.* at 507–08, 104 S.Ct. at 2546 (footnote omitted). In *Mabry,* the district court had permitted the government to withdraw its plea agreement and only accepted the guilty plea thereafter. Here, although the district court initially refused to permit the government to withdraw the plea, it did so on a misunderstanding of the law and over the objection of the government, which preserved the legal issue for appeal. The district court was thereafter permitted to correct its legal error, just as we would have been obliged to do had the district court declined to do so and the government appealed.

Within its order vacating its prior order enforcing the plea agreement, the district court found:

> During the hearing.... [i]t was not suggested, nor has it ever been suggested, that the government failed to withdraw the plea bargaining proposal before defendants

accepted it. Instead, defendants objected to the fact of reconsideration itself, suggesting that the court had gone past a point of no return and that defendants' double jeopardy rights or other unlabeled rights might be violated if the court attempted to correct any legal mistake concerning the enforcement of the plea "agreement."

We disagree with the defendants' position. The plea "agreement" enforced by the court did not alter the crimes charged against defendants. Defendants agreed to plead guilty to the crimes as originally charged, and the court accepted defendants' pleas. The court ordered, however, that defendants were not subject to the enhanced sentencing provisions of § 851. This is a decision which the government is entitled to appeal under the statute....

By reconsidering our action to enforce the plea "agreement," the court is not ordering a second prosecution of defendants, nor is the court ordering multiple punishments for the same offense. As in the *Hicks* case [*Hicks v. Duckworth*, 922 F.2d 409 (7th Cir.1991)], the prosecutor in this case made it clear that the government would appeal the court's decision in this case. Therefore, the defendants had no legitimate expectation of finality and repose. They knew if the government prevailed on appeal they would be subject to a mandatory minimum sentence of 20 years instead of a minimum mandatory sentence of 10 years....

In conclusion, on the basis of the *Mabry* case and other case law, the court finds that a legal error was committed when the court granted defendants' motion to enforce the plea agreement. Upon reconsideration, the court hereby vacates that decision.

(R., Vol. One, Tab 183 at 4–6).

■ We hold that the district court properly relied on *Mabry* in vacating its order enforcing the plea agreement. Consequently, the only issue left for us to decide is whether the district court abused its discretion in thereafter refusing to let Randel withdraw his guilty plea. We conclude that it did not. Randel's "inability to enforce the prose-cutor's offer is without constitutional significance." *Mabry* at 510, 104 S.Ct. at 2548. Here it is uncontested that: the government withdrew the plea agreement offer prior to Randel's acceptance (R., Vol. One, Tab 183 at 4); Randel was aware at the time he entered his plea that the government intended to appeal the court's ruling relative to the enforcement of the plea agreement; Randel represented to the court that his guilty plea was not contingent upon the government's success on appeal; Randel agreed that if the government prevailed on appeal he waived his right to withdraw his plea and to ask for a new trial and that he would accept resentencing. Under these circumstances, Randel's "plea was thus in no sense the product of governmental deception; it rested on no 'unfulfilled promise.'" *Mabry* at 510, 104 S.Ct. at 2548. Moreover, nothing in the record indicates that Randel's plea was other than knowingly and voluntarily made.

We also observe that *Olesen,* upon which Randel relies, is distinguishable. In *Olesen* the court held that a district court could not, absent fraud, modify the sentence portion of a plea agreement which all parties had agreed to and which the district court accepted. Unlike *Olesen,* in our case the government specifically attempted to withdraw the plea agreement before the district court accepted it, thereby preserving its right to appeal the validity of the plea agreement.

## II.

■ Randel contends that the trial court erred in finding that the prior Texas conviction used in his § 851 sentence enhancement was valid under state law.

Randel agrees that this is a mixed question of fact and law. "On the mixed question of whether the facts satisfy the proper legal standard, we conduct a *de novo* review if the question primarily involves the consideration of legal principles and apply the clearly erroneous standard if the question is primarily a factual inquiry." *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 940 F.2d 564, 572 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 589, 116 L.Ed.2d 614 (1991). Inasmuch as the question before us is "primarily

a factual inquiry," i.e., whether the Texas court apprised Randel of the range of punishment prior to accepting his guilty plea, the district court's findings will be reviewed under the clearly erroneous standard.

Randel argues that Texas law mandates that a sentencing court admonish a defendant of the range of punishment attached to an offense prior to accepting a plea of guilty. Randel argues that since "the only records of the case are insufficient under Texas law to show that prior to the judge accepting the guilty plea he admonished Randel concerning the range of punishment," (Brief for Appellant at 19), and since he testified that the Texas court did not admonish him of the range of punishment prior to sentencing him, the district court erred in finding that the conviction was valid under Texas law. It is uncontested that "[t]here is no transcript of the [Texas sentencing] proceedings because [Randel] . . . waived the presence of a court reporter." (R., Vol. One, Tab 208 at 2).

The government responds that the record supports the district court's findings that Randel's prior conviction was valid under Texas law. We agree. Following a hearing during which Randel and the government presented evidence, the district court entered a detailed order, finding:

> The government has presented the court with an affidavit from the Texas judge who took defendant's guilty plea, Hon. Ted Poe. The judge states that "on each and every occasion" when he has taken a guilty plea, he has advised the defendant of the range of punishment attached to the offense regardless of whether the defendant has viewed the written admonishments form. He further states that he personally advised defendant of the range of punishment and that he would not have allowed the guilty plea unless he was fully satisfied of the defendant's understanding of the matter. . . . Defendant was sentenced in accordance with a plea agreement to six years. . . . Defendant served about eight months of the sentence before being paroled. Defendant has never attempted to appeal or overturn his conviction and sentence, although he stated that he has applied for a pardon. . . . We . . . believe the

plea met the requirements of Texas law. We find it is more probable than not that Judge Poe verbally advised defendant of the maximum penalty for the offense, as he advised defendant of his other rights, and as he has done by habit and practice during his career as a district court judge. This is not only supported by the affidavit of the judge and the testimony of the prosecutor, but also by the records indicating that defendant was admonished of the consequences of his plea and the admissions of defendant that Judge Poe verbally advised him of his rights.

(R., Vol. One, Tab 208 at 4–6).

We hold that the district court's finding that Randel's prior Texas conviction was valid under state law was not clearly erroneous. Particularly so, when, as here, there was no transcript of the Texas sentencing proceeding because Randel waived the presence of a court reporter. *Cf. United States v. Burson,* 952 F.2d 1196, 1203 (10th Cir.1991) (under the invited error doctrine, a defendant who induces an erroneous ruling is prevented from being able to have it set aside on appeal).

### III.

Randel contends that the district court erred in finding that his prior Texas conviction was not obtained in violation of the United States Constitution.

Randel argues that under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the record must affirmatively disclose that a defendant who pleads guilty does so understandably and voluntarily. *Boykin* involved a direct appellate review of a conviction allegedly based upon an uninformed guilty plea in which the Court held that the waiver of rights resulting from a guilty plea "cannot [be] presume[d] . . . from a silent record." 395 U.S. at 243, 89 S.Ct. at 1712. Randel argues that inasmuch as "[t]he certified record of [his] Texas conviction does not affirmatively show that [he] was advised of the range of his punishment," (Brief for Appellant at 33), "his Texas guilty plea conviction cannot be reviewed by this court to determine if the plea was voluntary

and intelligently made" *Id.* As set forth *supra*, it is uncontested that there is no transcript of the proceedings because Randel waived the presence of a court reporter, (R., Vol. One, Tab 205 at 8), and Randel "has never attempted to appeal or overturn his [Texas] conviction and sentence." *Id.* at 5.

The Supreme Court recently considered and rejected similar arguments in *Parke v. Raley,* —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). In *Parke,* the Court held that it defies logic to presume that a defendant was not advised of his rights based on the mere unavailability of a transcript and that *Boykin* does not prohibit a state court in a collateral proceeding from applying the presumption of regularity to a final judgment of conviction offered for the purpose of sentence enhancement:

> In 1986, respondent Raley was charged with robbery and with being a persistent felony offender under a Kentucky statute that enhances sentences for repeat felons. He moved to suppress the 1979 and 1981 guilty pleas that formed the basis for the latter charge, claiming that they were invalid because the records contained no transcripts of the proceedings and hence did not affirmatively show, as required by *Boykin* ... that the pleas were knowing and voluntary.
>
> \*       \*       \*       \*       \*       \*
>
> Respondent, however, never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding. To import *Boykin's* presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights.... Respondent, by definition, collaterally attacked his previous convictions; he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments....
>
> There is no good reason to suspend the presumption of regularity here.... Evi-

dently, no transcripts or other records of the earlier plea colloquies exist at all.... The circumstances of a missing or nonexistent record is, we suspect, not atypical, particularly when the prior conviction is several years old.... On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not apprised of his rights. In this situation, *Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained.

—— U.S. at —— and ——––——, 113 S.Ct. at 518 and 523–24.

Applying *Parke* to our case, we hold that the district court did not err in finding that Randel's prior state conviction was valid under the United States Constitution. Moreover, the record supports the district court's specific findings on this issue:

> We believe the government has demonstrated that the plea of guilty in this case was knowingly and voluntarily made. Judge Poe verbally explained defendant's rights to him. Defendant admits this. Defendant was not surprised by the sentence he received. He received exactly the sentence he was told he would receive before he pleaded guilty. He does not contend that his plea was made out of ignorance or coercion. Accordingly, we find that the guilty plea meets federal constitutional standards.

(R., Vol. One, Tab 208 at 6).

**AFFIRMED.**