**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MELISSA R. LOMAN,

     Defendant-Appellant.

No. 13-6170
(D.C. No. 5:13-CR-00035-C-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **GORSUCH**, and **HOLMES**, Circuit Judges.

Melissa R. Loman was charged with nineteen counts of using a minor to

produce child pornography in violation of 18 U.S.C. § 2251(a). The government

agreed to dismiss eighteen of the nineteen counts in exchange for Ms. Loman

pleading guilty to one count, and waiving her right to appeal or collaterally challenge

her guilty plea, sentence, and any other aspect of her conviction. Ms. Loman entered

---

[*]    This panel has determined that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

into the plea agreement with the government and pleaded guilty. She was sentenced to 360 months' imprisonment, which was within the advisory guideline sentencing range.[1] In spite of the appellate waiver in her plea agreement, Ms. Loman filed a notice of appeal. The government has moved to enforce the appeal waiver pursuant to *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam).

When reviewing a motion to enforce, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived [her] appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325. Ms. Loman concedes that her appeal is within the scope of the waiver, that her waiver was knowing and voluntary, and that enforcing the waiver would not result in a miscarriage of justice. She argues, however, that the district court did not explicitly accept the plea agreement, and failed to comply with Fed. R. Crim. P. 11(c)(4). She contends that these deficiencies defeat the government's motion to enforce the appeal waiver.

A district court must accept a plea agreement before it becomes binding. *See United States v. Novosel*, 481 F.3d 1288, 1292 (10th Cir. 2007). But the court does

---

[1] Ms. Loman's guideline range was 360 months to life imprisonment, but it was reduced to 360 months because that was the statutory maximum. The guideline range included enhancements for multiple victims; a victim being under the age of 12; commission of a sexual act or sexual contact upon a victim; distribution of the material; and having a special relationship with the victims (Ms. Loman is the mother of the three victims).

not need to expressly accept the agreement if its actions demonstrate constructive acceptance of the plea agreement. *See United States v. Leyva-Matos*, 618 F.3d 1213, 1216 n.1 (10th Cir. 2010); *United States v. Smith*, 500 F.3d 1206, 1213 n.3 (10th Cir. 2007). The government concedes that the district court never explicitly stated that it accepted the plea agreement, but the government asserts that the court constructively accepted the agreement. We agree.

In *Smith*, we noted that "the District Court did not expressly state on the record that it was 'accepting' or 'rejecting' the plea agreement." 500 F.3d at 1213 n.3. But we explained that "[t]he court did . . . operate within the terms of the plea agreement, questioning Ms. Smith with respect to its terms during the Rule 11 colloquy and dismissing, as provided in the plea agreement, the five other counts set forth in the superseding indictment." *Id*. We therefore concluded that "these actions amount to constructive acceptance of the plea agreement." *Id*.

The circumstances are similar here. At the change-of-plea hearing, the district court noted that the "plea is being entered pursuant to a plea agreement," Mot. to Enforce, Att. 2 at 12, and that the plea agreement "ha[d] been reduced to writing," *id*. at 13. The court then directed the government to summarize the substantive portions of the agreement. That summary included the government's promise to dismiss Counts 1 through 6 and 8 through 19 of the indictment, and to not prosecute Ms. Loman for other child-pornography-related crimes occurring between April 19, 2011 to February 1, 2013. After the summary, the district court stated, "Ms. Loman,

- 3 -

this appears to be a simple quid pro quo.  You agree to plead guilty to Count 7, the government agrees to dismiss the remaining counts." *Id*. at 15.  The district court also asked if the written plea agreement contained all of the agreements between the parties and counsel for Ms. Loman replied, "Yes." *Id*. at 16.  And, on questioning by the district court, Ms. Loman agreed that the written plea agreement contained all of the agreements and promises that had been made to her.  The court emphasized to Ms. Loman that only the promises contained in the written plea agreement were enforceable.  At the end of the hearing, the district court accepted Ms. Loman's guilty plea.

Consistent with the plea agreement, the minutes from the change-of-plea hearing reflect that Ms. Loman pleaded guilty to Count 7 of the indictment, and that Counts 1-6 and 8-19 would be dismissed at sentencing.  At sentencing, the district court announced its sentence and referenced the plea agreement, stating, "I advise you that under the plea agreement you have waived your right of appeal except in certain very limited circumstances."  Mot. to Enforce, Att. 3 at 27.  The district court then implemented the terms of the plea agreement by entering a judgment that memorialized Ms. Loman's plea to Count 7 and dismissed the remaining counts.  Although the district court did not expressly state on the record that it was accepting or rejecting the plea agreement, its actions demonstrate that it was operating within the terms of the plea agreement and amount to constructive acceptance of the agreement.

As for the alleged Fed. R. Crim. P. 11(c)(4) error, that rule states "[i]f the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) [,where the government will not bring, or will move to dismiss, other charges,] . . . the agreed disposition will be included in the judgment." We agree with the government's contention that Ms. Loman was "constructively and effectively notified [by the court's conduct] that the agreed disposition, i.e., dismissal of the remaining counts, would be included in the judgment, thus satisfying Fed. R. Crim. P. 11(c)(4)." Reply to Mot. to Enforce at 5.

We acknowledge that it would have been preferable for the district court to explicitly state that it was accepting the plea agreement and to give the Rule 11(c)(4) notification. But the district court's actions in this case demonstrate that it did accept the plea agreement. Most importantly, the district court operated within the terms of the plea agreement, and gave Ms. Loman the benefit of her bargain, by dismissing eighteen of the nineteen counts for which she was charged. Ms. Loman concedes that she has no valid arguments to challenge the appeal waiver contained in the plea agreement. Accordingly, we grant the government's motion and dismiss this appeal.

Entered for the Court
Per Curiam
